Good morning, your honors. Kelly Dove on behalf of Appellant Raymond Padilla. I'd like to reserve three minutes if our conversation allows for a rebuttal. Mr. Padilla appeals the District Court's wholesale sua sponte dismissal of his civil rights complaint brought under 42 U.S.C. 1983. Mr. Padilla alleges and has maintained for more than a decade that he has been wrongly identified as a member of a prison gang and security threat group. He has spent years challenging that classification by filing countless grievances and this civil action that's now before us. Mr. Padilla's security threat group designation has prevented him from participating in prison programs, accruing positive time credits, his qualification for parole, and importantly has put a target on his back, drawing the ire of crime. I want to ask you the question about the good time credits, which you just mentioned. The original complaint alleged that he could not earn good time credits. I believe that's at page 5 of the original complaint. But the most recent complaint, the amended version of that complaint and the supplemental complaint and the amended supplemental complaint no longer mention that. So is that a live issue or not a live issue? Well, it is. I agree with you, Your Honor. It is not a basis for his most recent operative complaint. It could be a live issue if he's allowed to amend, if that's necessary. But he hasn't I'm just asking if it is. Is it a live issue in your view under the most recent complaint? Not under the most recent complaint. Okay. And he had raised it earlier in an unsuccessful habeas petition, but it is correct that it's not in the most recent complaint. I'm mostly listing it as one of the effects of his designation that he's challenged. The sole basis for the district court's dismissal was the lack of allegations of personal participation of each defendant. The district court ordered that and opined that each defendant had not been adequately connected to the allegations in Mr. Pedia's complaint. As the case reaches us, is there any part of it in your view that is not moot since he is no longer in the prison where he experienced these problems? Absolutely, Your Honor, because while there are many situations where a case becomes moot upon a prisoner's transfer to another institution, this is not one of them. Those cases that do not follow the inmate. Problems with a law library. Problems with... Let's talk about this case. You're going to run out of time. In this case, Mr. Pedia's classification follows him wherever he goes. He's been transferred multiple times. Right now he's at Warm Springs. He has one claim for deliberate indifference that resulted in his being placed in administrative segregation, correct? Sort of, Your Honor. Placed with an inmate who was a member of what was seen as a rival gang. All right. And is that going to be, is that a live case that we, issue we have to deal with right now? Well, he's seeking damages, Your Honor. Damages. So it's not, but in terms of injunction, that aspect would be moot. That aspect, yes, that aspect alone would be moot. Okay. And then the classification, you're looking for, he's looking for some injunctive relief with regard to classification, correct? That's correct. And that's not moot because... That is not moot because it affects what he can participate in at Warm Springs. It affects his parole. He contends that it will affect him beyond... What do you mean it affects his parole? I believe it adds points to his parole consideration, whether he gets parole. And right now he is scheduled to be released on parole sometime in the near future. But that, his history with that classification will follow him beyond the prison walls. Well, to the extent that it affects the length of his imprisonment, why isn't there a Heck v. Humphrey bar? If he's arguing that the length of his confinement is going to be longer, can he do that successfully? Well, not exactly, Your Honor. And that's why he has had an unsuccessful habeas petition as passed, and we have not made the length of his confinement the focus of this appeal. But he still, where he is placed, is affected by his security threat group status at all times. In fact, he was recently put in solitary confinement just this past weekend, allegedly because another inmate did not want to be housed with him with his current security threat group status. So even though he's currently at Warm Springs and has different confinement circumstances than he had at Ely State Prison, that security threat group status and his identification as a member of that prison gang, he does not get to leave that behind at Ely State Prison. And in the course of this litigation, he started out at High Desert, went to Ely, went to Warm Springs, went back to Ely. So he's not static at one place, and I don't think his transfer, it's not imminent, but I think it's beyond speculative given how much he's moved around. So his being put in solitary based on his security threat group, he said he's routinely threatened with the prospect of going back to Ely. And his denial of being, he's still not able to be involved in any prison employment that earns compensation or participate in certain programs, all based on the security threat group status. So... Could you address why you believe his complaint is adequate with respect to the individuals that the district court said he hadn't alleged personal participation? Sure, Your Honor. There's a couple different standards at work here, of course. There's, with regard to his injunctive relief claims, he does not need to allege the level of personal participation that he would for a damages claim. So insofar as Mr. Padilla seeks to have his security threat group status remedied in some way with an injunction, he does not need to connect all of those dots that he would for seeking damages. And as far as the damages prong is concerned, which does require personal participation, Padilla did allege, as far as the Eighth Amendment claim goes, the personal participation of 14 defendants in his complaint, I believe in the excerpts at pages 19 to 20. And it's also the kind of violation that he's experienced. He cannot identify everybody all the way up the chain because of his status as an inmate. This is not a situation where he can say Bill Smith hit me on such and such a date. This is a situation where he's challenging an administrative status, going up the chain, trying to determine who is responsible for this classification at each step, and did his best to make these allegations based on the names on the grievances and who he could find out was making these decisions directly and issued those allegations accordingly. Thank you. You may want to save the rest of your time so we can hear from the State.  Good morning, Your Honors. May it please the Court. My name is Clark Leslie. I'm with the Attorney General's Office. It's my privilege to represent the appellees in this matter. If I may, I would like to perhaps bring the Court up to date in terms of several matters that my esteemed colleague has brought to your attention that may  you have asked in terms of your questions. Mr. Padilla, after 20 years of incarceration, has been taken to Warm Springs Correctional Center. You're experienced jurists. You've had more than your share of prison litigation cases. You know the issues that face prisons around the country in terms of trying to deal with gang violence and gang problems. What the Nevada Department of Corrections has done is they have segregated gangs and they have placed them in individual institutions. And the idea is to avoid having friction between rival gangs in prisons. So the Nevada Tracee, for example, which translates to 13, which is the original number of members of the Nevada Tracee, have been placed at Warm Springs Correctional Center. They have segregated gangs such as the Black Guerrilla Group, the Mau Maus at Southern Desert. We have the Norteños at High Desert State Prison. We have the neo-Nazi skinhead groups such as the Aryan Warriors, the Aryan Brothers, the Christian Soldiers for White Purity in places such as Lovelock. So to address several of the questions and Mr. Padilla at Warm Springs, that accomplishes several things. We do believe that he has had a longstanding membership with the gang. We would be highly dismotivated from transferring him from Warm Springs to any other particular prison where there might be a problem with him. But let's keep in mind, Your Honors, this question has never been answered. And in respect to what you mentioned, Judge, in terms of addressing matters that are not necessarily in the briefs, it is important to keep in mind that Mr. Padilla always had an opportunity to disavow and to disprove his STG, his Security Threat Group membership, through AR446. And he has had this opportunity for a long time. Well, Counsel, I'm not really sure what points you're trying to make in response to his complaint. Is it a failure to exhaust administrative remedies, which is not really argued specifically in the briefs? Because we can't determine at this stage whether his allegations are true or false. We have to accept them all as true for the purpose of our decision here. So what specifically matters to our decision that he has not followed this procedure? Judge Graber, it is true that facts have to be accepted when they're well pled, but as Ashcroft v. Iqbal tells us, there has to be more than just a sheer speculative belief in that. And after 20 years – Well, there's no sheer speculative belief. I mean, the allegations are that he's been labeled as an STG. He's seeking specific injunctive relief and damages for specific incidents. So what's the speculation? It's a plausible complaint. What the district court – and in any event, it's not clear that Iqbal is the appropriate vehicle in these cases. The district court faulted him for not identifying the – as counsel says, 14 defendants – to specific actions. Now, to take a corporate standard, which is Iqbal, in that context and transfer it to a prison where the inmate is at a complete disadvantage in trying to escape, why isn't the complaint sufficient for purposes of pleading a plausible cause of action, simply because it's a viable – they're viable claims? Viable in the sense that he makes the allegation, but after three years of having the opportunity to do discovery, we still don't know the basic denominators – who, what, where, when and why. He claims that he was given an STG classification. He doesn't mention who or when that happened or any predicate evidence that was – that – Well, he was, wasn't he? He was. Well, so – We don't know – I'm sorry. Why does it matter when and who and where? If he says, I have this classification, it is factually wrong, because I don't meet the criteria for this classification. And so right now, the people in charge haven't let me out of this classification, and as a result, I'm suffering some problems. Now, that may or may not be true when, you know, if this case is tried or it even goes to summary judgment, but right now, why don't we have to take that as true? You can, and it is within your purview to do so. My difficulty with that is he had the I know that, but that takes me back to the question you still haven't answered. What difference does it make that he had an administrative vehicle that he didn't use? Is there a requirement that you brought to the Court's attention for a type of exhaustion of administrative remedies, or is it simply your way of saying, well, factually, he's not going to be able to prove it, because if he really had a case, he would have done something different, which – what are we supposed to take away from that? It's not an exhaustion of remedies argument, Your Honor, but my position is this. He had the perfect mechanism by which he could have identified times, people, circumstances, factual background, and the reasons behind his designation. He didn't do so. He has the burden of proof. He had the best opportunity to answer these questions the first time the district court heard his case and said, draw the link, or as Ms. Dove says, connect the dots. At some point, he has to accept responsibility under a system that provides him the opportunity to obtain that evidence. If he elects not to do so, that could – there are several inferences that can be drawn from that, but my client shouldn't be prejudiced or disadvantaged because he fails to take appropriate, necessary, and available steps to obtain the very information that this Court is asking for now. How could your client be prejudiced, since it has the records of all of the prison operations? Because Your Honor is telling me that it is my client's responsibility to accept this, or that my client has to come before a court and accept vague allegations. They're vague. He's out alleged conduct, and he's identified by name various individuals who he believes to be involved in the decision to classify him. Your Honor, he takes a huge container, he throws a bunch of names in it, and he says, those people are responsible for my plight in life. We don't know why. We don't know how. We don't know which ones. He started out with the governor, the attorney general, and everyone from the top down in the state. But he doesn't have the complaint listing those people now, correct? Oh, they were dismissed from the complaint. Right. And that's not an issue on appeal. No. No, Your Honor, it is not. But we're talking about his second amended complaint. Yes. The linkage issue wasn't raised until the dismissal of the first amended complaint, right? That is... We've had several such cases where we've had a very, very specific criticism of this pleading. I – it would be our argument that he was put on notice that he needed to be more specific the first time around. But certainly, he was expressly given the directions the second time around. So why shouldn't he at least be given leave to amend? He's had three opportunities in three – well, one opportunity. And now he has counsel, which presumably will make things more rational and easier for your clients to deal with. Well, I'm concerned about that where I read in a brief that now that he has an attorney, he'll be able to state what he wasn't able to state before. Well, let the district court deal with it. I think they've – We deal with what we've got, not your fears. Okay. I appreciate your fears, and they may be well-founded, but we have to deal with what the record is when we – They're not – They're not here. I hope you can appreciate, they're not fears so much as my concern that things may be generated now with the presence of counsel that should have been generated before but have never manufactured. I see that my time is up. Thank you very much, Your Honors. Thank you. You have some rebuttal time remaining. Thank you, Your Honors. Just a couple quick points on rebuttal. Just to take on where Mr. Leslie left off, the specificity issue, as I alluded to earlier, Mr. Padilla I think did his best to connect those dots, even though they're not really part of the complaint. He did attach a number of his grievances, and what looks apparent to me from reviewing the grievances and his own personal experiences with these individuals is he took some of the names off the grievances that are signing the grievances, denying his request for relief, which he continually requested hearings on his STG classification, requested hearings under AR-446, requested hearings that complied with AR-507. Because we don't have evidence in the record, and this is on a motion to dismiss, I can't specifically rebut Mr. Leslie's contention that he could have but did not pursue relief under AR-446. But from what I've reviewed in the grievances, which are in the excerpts, he at least on paper requested such relief. And then as regards the form of the injunctive relief that would take authority away from the prison to manage its own affairs, Mr. Padilla has not specifically sought a form of an injunction yet. As we pointed out in our briefing, he hasn't requested a preliminary injunction, asking for a transfer, asking for a reassignment. I think making any decision assuming that Mr. Padilla would be requesting such relief as part of his injunction is premature. At this point he's just asking to be able to prove his case, and whatever his position is, whether he's released from prison at that point, or at another prison or where he is now, will shape the appropriate injunctive relief that might be warranted at that time, whether it's a revisiting of his classification, a change in his status, or some other relief that's appropriate once that point is reached. Thank you, counsel. The case just argued is submitted, and we particularly appreciate pro bono counsel taking on these cases. It's very helpful to the court.
judges: Noonan, Graber, Fisher